**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Dari Mauricio Mayorga Lopez, <br><br> Petitioner, <br><br> -v- <br><br> Kristi Noem and Officer Montgomery, <br><br> Respondents. | 2:26-cv-1201 <br> (NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On March 2, 2026, Dari Mauricio Mayorga Lopez filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) The Petition argues that ICE's arrest of Mr. Mayorga Lopez was unlawful because it was made without probable cause in violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. 287.8(c)(2)(ii), and his detention without notice and opportunity to be heard since February 28, 2026 violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and 8 U.S.C. § 1225. The Petition seeks a writ of habeas corpus requiring Respondents to immediately release Mr. Mayorga Lopez on his own recognizance. (Pet. at 2.)[1] For the reasons explained below, the Petition is GRANTED in part.

---

[1] The Petition also seeks an order prohibiting Mr. Mayorga Lopez's removal from the United States and transfer from the Eastern District of New York pending adjudication of the instant petition. (Pet. at 2.) The Court has effectively granted such relief through the issuance of a March 2, 2026 Stay of Removal and Order to Show Cause, which required Respondents to provide their

Respondents are federal government officials named in their official capacities: (1) Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security ("DHS"); and (2) an ICE Officer by the name of "Officer Montgomery" for whom the Petition provides an address but no further identifying information.[2]

Respondents "have no objection to the Court deciding the petition on the papers in lieu of a hearing" and submit three documents on which they rely to oppose the Petition. (Response to Order to Show Cause ("Resp.") at 3, ECF No. 9.)[3] They rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (Resp. at 2.) Respondents argue that ICE's detention of Mr. Mayorga Lopez falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking

---

response to the Petition by March 3, 2026, at the latest, and prohibited Respondents from removing Mr. Mayorga Lopez from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 3.)

[2] The Petition does not explain Officer Montgomery's connection to this action, including whether he was involved in arresting Mr. Mayorga Lopez or is involved in detaining him at the Nassau County Correctional Center ("Nassau County Jail"). (*See* Resp. to Order to Show Cause ("Resp."), ECF No. 7 (representing that Mr. Mayorga Lopez was detained at the Nassau County Jail following his arrest; Pet. ¶ 1 (asserting, on information and belief, that Mr. Mayorga Lopez is detained at the Nassau County Jail)).)

[3] In an effort to conserve the parties' resources, the Court's Order to Show Cause required Respondents to provide a full response to the Petition by March 5, 2026 or, in the alternative, a more abbreviated response incorporating Respondents' arguments made in prior habeas actions resolved by this Court by March 3, 2025. Respondents submitted a letter and two documents— the Warrant and Notice to Appear—on March 3, 2026, and requested additional time to provide even their abbreviated response. The Court granted an extension for them to do so, and on March 4, 2026, Respondents filed their complete response with submissions consisting of a declaration by Acting Supervising Detention and Deportation Officer Michael Damiano (Declaration of Michael Damiano ("Damiano Decl."), ECF No. 9-1 at 1–4) and the arrest warrant and NTA that they had previously submitted (ECF No. 9-1 at 5–10).

2

admission" to the United States. (Resp. at 2.) According to Respondents, Section 1225(b)(2) requires Mr. Mayorga Lopez's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal voluntarily dismissed*, No. 26-219 (2d. Cir. Feb. 25, 2026), and that decision is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Mayorga Lopez is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, Mr. Mayorga Lopez entered the country on January 28, 2024, at age seventeen, and Customs and Border Protection determined that he was an Unaccompanied Alien Child and referred him to the Department of Health and Human Services ("HHS"), who placed him in the custody of the HHS Office of Refugee Resettlement. (Damiano Decl. ¶¶ 3–7.) Thereafter, Mr. Mayorga Lopez was transported to the Southwest Key Estrella facility in Tucson, Arizona before being released on February 4, 2024 to his family sponsor—a brother residing in Freeport, New York, who was determined to be a suitable family member within the meaning of 8 U.S.C. § 1232(c)(2)(A). (*Id.* ¶¶ 8–9.) As a result, at the time that ICE detained him on February 28, 2026, Mr. Mayorga Lopez had been living in the interior of the United States for more than two years.

3

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (Resp. at 2.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[4] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[5] The Fifth Circuit recently

---

[4] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[5] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the

reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[6]

Moreover, nothing in the record shows that ICE arrested and detained Mr. Mayorga Lopez under Section 1225(b)(2) rather than Section 1226(a). (*See* Warrant, ECF No. 9-1 (reflecting that following his arrest, Mr. Mayorga Lopez was served with an arrest warrant issued pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)). Respondents first invoked Section 1225(b)(2) as the basis for Mr. Mayorga Lopez's detention in the course of this litigation. (Mot. Extension of Time at 2, ECF No. 7; Resp. at 2.) The Supreme Court has recognized that a "post-hoc

---

Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

[6] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (Resp. at 2). This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (same).

Accordingly, ICE's detention of Mr. Mayorga Lopez is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Mayorga Lopez has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. Resp. at 2; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded

6

procedural due process protection).[7] ICE's detention of Mr. Mayorga Lopez without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Mayorga Lopez since February 28, 2026, violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Mayorga Lopez without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Mayorga Lopez because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on February 28, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Mayorga Lopez without notice or an opportunity to be heard. Although the Attorney General may have a legitimate

---

[7] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

7

government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Mayorga Lopez presents a flight risk or danger to the community or even that there were *any* pending removal proceedings at the time of his warrantless arrest.

The Court makes the following factual findings pertinent to the analysis of the *Mathews v. Eldrige* factors here. Respondents rely on the declaration of ICE Acting Supervisory Detention and Deportation Officer Michael Damiano, which includes hearsay statements based not on personal knowledge, but on information gathered from unidentified persons and records. (Damiano Decl. ¶ 2.) Damiano asserts that he participated in a "team of officers" that arrested Mr. Mayorga Lopez. (Damiano Decl. ¶ 10.) However, the factual record shows that at no time before he was arrested by ICE on February 28, 2026 did anyone at DHS, CBP, or ICE determine that Mr. Mayorga Lopez poses a risk to public safety or a risk of flight prior to any removal proceedings.

As a threshold matter, Mr. Mayorga Lopez has no criminal record whatsoever, and Respondents do not even argue that he does. Thus, Respondents fail to show that any risk of danger justifies Mr. Mayorga Lopez's detention, much less that anyone at any government agency ever made such a determination prior to his arrest.

Moreover, Respondents do not argue, much less show, that there was any finding that Mr. Mayorga would fail to appear at removal proceedings, especially because *no* removal proceedings were initiated against Mr. Mayorga Lopez *before* his February 28, 2026 arrest. Damiano concedes that a Notice to Appear in immigration court was only served on Mr. Mayorga Lopez *after* he was arrested and taken to an "ICE processing office in East Meadow." (Damiano Decl. ¶ 19.) The Notice to Appear itself indicates that it was served on Mr. Mayorga

8

Lopez *not* in South Hempstead where he was arrested, but at "100 Carmen Avenue, East Meadow, NY"—the location of the ICE processing center adjacent to the Nassau County Jail, where Mr. Mayorga Lopez was transported *after* his arrest. (ECF No. 9-1 at 8.) Moreover, removal proceedings did not commence until ICE filed the NTA with the Executive Office for Immigration Review ("EOIR"), which took place *two days later* on March 2, 2026. (Damiano Decl. ¶¶ 19, 21.) Finally, the arrest warrant itself was not even served on Mr. Mayorga Lopez until he was at the ICE processing center at "100 Carman Ave, East Meadow, New York" as shown by the face of the warrant. (ECF No. 9-1 at 6.)

On this record, ICE's arrest and detention of Mr. Mayorga Lopez is solely based on Respondents' expansive interpretation of Section 1225(b)(2) as a statute that requires the detention of *any* non-citizen apprehended anywhere in the interior of the United States regardless of their continuous residence in this country for months, if not years, and regardless of whether there are any pending removal proceedings or has been any determination as to a risk of dangerousness or flight.

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Mayorga Lopez's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings— Respondents' detention of Mr. Mayorga Lopez with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Mayorga Lopez was unlawful from its inception, notwithstanding Respondents' efforts at post-

hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[8] *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Mayorga Lopez from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Mayorga Lopez is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at

---

[8] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Mayorga Lopez, that provision is plainly inapplicable to him. Mr. Mayorga Lopez is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id.* at *15. Accordingly, ICE's detention of Mr. Mayorga Lopez since February 28, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

119, because it is necessary to ensure that the release of Mr. Mayorga Lopez is not rendered meaningless.

Additionally, Mr. Mayorga Lopez "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Mayorga Lopez was not subject to any electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Mayorga Lopez without any condition for electronic monitoring, including but not limited to GPS monitoring.

The relief afforded by the Court at this time is limited to Mr. Mayorga Lopez's Fifth Amendment due process claim. However, because other claims remain and may impact the scope of relief, this matter remains open for further development of the record. *See Velasco Lopez*, 978 F.3d at 855 ("Habeas corpus, as the Supreme Court has said, is an adaptable remedy, the precise application and scope of which changes depending upon the circumstances . . . . The equitable and flexible nature of habeas relief also gives the reviewing court considerable latitude . . . .").

## CONCLUSION

Accordingly, for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted in part as follows.

Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner, without any electronic monitoring, including but not limited to GPS monitoring, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **10:00 p.m. tonight**. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to all identification cards, clothing, and money. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Petitioner was released, in a filing on the docket by **11:59 p.m. tonight**. Additionally, pending the issuance of any final removal order against Mr. Mayorga Lopez, Respondents are enjoined from denying Mr. Mayorga Lopez bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

The Show Cause hearing scheduled for **March 6, 2026 at 2:00 p.m.** in the Alfonse D'Amato U.S. Courthouse will proceed for further development of the record as to Mr. Mayorga Lopez's remaining claims. Both parties have the opportunity to call any witnesses for testimony. Mr. Mayorga Lopez is not required to attend, but of course is welcome to do so. **Should Mr. Mayorga Lopez not attend the hearing, his counsel is required to inform the Court through a filing on ECF by 11:00 am on Friday, March 6, 2026.**

Dated: Central Islip, New York
       March 5, 2026

           */s/ Nusrat J. Choudhury*
           NUSRAT J. CHOUDHURY
           United States District Judge